UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEAN MARC CHARLES,

                      Plaintiff,

      -against-                              **MEMORANDUM AND ORDER**
                                                    19 CV 3013 (RPK) (CLP)
SLADE INDUSTRIES, INC. and
INCLINATOR COMPANY OF AMERICA,

                      Defendants.
------------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

       On April 1, 2019, plaintiff Jean Marc Charles ("Charles" or "plaintiff") commenced this personal injury action against Slade Industries, Inc. ("Slade"), in Supreme Court, Kings County. The action was removed to this Court on May 21, 2019, and an Amended Complaint was filed on January 11, 2021, adding Inclinator Company of America ("Inclinator") as a second defendant. (Am. Compl.[1]).

       Currently pending before this Court is a discovery dispute relating to plaintiff's efforts to interview certain former employees of Slade and defendant's objection to certain questions posed by plaintiff's counsel during the deposition of former Slade employee, Eric Tranquellino. For the reasons set forth below, the Court denies plaintiff's request for a hearing, denies plaintiff's request to re-open the deposition of Mr. Tranquellino, but confirms plaintiff's right to interview any other former Slade employees.

## FACTUAL BACKGROUND

       Plaintiff Charles alleges that defendant Slade owned, operated, managed and repaired the elevator in the T-8 building (the "subject elevator"), located at Kingsborough Community

---

[1] Citations to "Am. Compl." refer to the Verified Amended Complaint filed by plaintiff in this court on January 11, 2021, ECF No. 32.

1

College (the "College").² (Id. ¶ 9-14). According to the Amended Complaint, on or before January 17, 2018, Slade entered into an agreement with the College to provide management, supervision, and implementation of general repair and maintenance services to the elevators at the College, including the subject elevator. (Id. ¶ 16).

Plaintiff alleges that on January 17, 2018, while he was lawfully on the premises and in the subject elevator, the elevator suddenly dropped and stopped abruptly, causing plaintiff serious injuries. (Id. ¶ 19). Plaintiff alleges claims of negligence against Slade for failing to properly perform general repair and maintenance services to the subject elevator.³

## DISCUSSION

A. The Tranquellino Deposition Dispute

On December 8, 2022, plaintiff deposed former Slade employee Eric Tranquellino. Approximately one month prior to the incident, Tranquellino had replaced a hoist cable which holds the lift. (Def.'s 1/25/23 Ltr.⁴ at 1). Plaintiff alleges that this cable broke on the date of the incident, causing the lift to fall into the elevator shaft. (Id.) According to defendant Slade, during the deposition, plaintiff's counsel asked Tranquellino questions about his relationship with Slade's counsel, including how often he spoke with counsel, for how long, what documents were reviewed, and whether there was any written agreement between Tranquellino and counsel. (Id. at 2). Defendant represents that Tranquellino gave answers to all of these questions. (Id.) However, defendant's counsel objected to two questions and instructed the witness not to

---

² According to the Amended Complaint, the elevator bears the designation "medical clearance is required for use of this elevator." (Am. Compl. ¶¶ 9, 15).

³ Plaintiff also brings product liability claims against defendant Inclinator based on alleged defects in its design, manufacture and sale of the subject elevator. (Am. Compl. ¶¶ 25-51).

⁴ Citations to "Def.'s 1/25/23 Ltr." refer to defendant Slade's letter motion regarding the discovery dispute, filed on January 25, 2023, ECF No. 60.

2

answer.  (Id.)  The first question asked referred to an hour, hour and a half meeting with defendant's counsel; Tranquellino was asked: "what did you say to [her] . . . and what did [she] say to you . . . ?"  (Id.)  The second question objected to by counsel was whether Tranquellino rendered or gave his opinion as to certain pictures shown to him during a zoom conference with defendant's counsel.  (Id.)

Defendant asserts that these two questions were improper because they seek communications covered by attorney client privilege and/or are protected by the work product doctrine.  (Id. at 2-3).  With respect to the attorney-client privilege, defendant argues that communications between company counsel and former company employees are protected by the privilege "'if they are focused on exploring what the former employee knows as a result of his prior employment about the circumstances giving rise to the lawsuit.'" (Id. at 2 (quoting Gary Friedrich Enters., LLC v. Marvel Enters., No. 08 CV 1533, 2011 U.S. Dist. LEXIS 54154 at *17 (S.D.N.Y. 2011))).  Defendant contends that even if the communications are not privileged, the questions asked by counsel during the meetings and the discussion in response could reveal counsel's thoughts and analysis of the issues raised in the litigation, which are protected under the work product doctrine.  (Id. at 3 (citing Gary Friedrich Enters., LLC v. Marvel Enters., 2011 U.S. Dist. LEXIS 54154 at *20)).  Defendant argues that Mr. Tranquellino was deposed regarding information he obtained during the course of his employment with Slade and his testimony related to this lawsuit.  (Id.)  Additionally, defendant argues, questions about discussions between Mr. Tranquellino and Slade's counsel during the course of preparing for the deposition are protected work product because they could reveal counsel's thoughts.  (Id.)

With respect to defendant's objections to questions asked of Mr. Tranquellino, plaintiff contends that there is no documented formal relationship between the witness and Slade's

3

counsel, and therefore the attorney-client privilege does not apply. (Pl.'s 1/27/23 Ltr.[5] at 2). Thus, plaintiff argues that a hearing is needed to determine whether the "adverse interest" exception is applicable to the relationship between Slade and Mr. Tranquellino. (Id. at 3-4 (citing SEC v. Gupta, 281 F.R.D. 169, 173 (S.D.N.Y. 2012) (holding that "[w]hen an attorney discloses work product to prepare a non-party witness for a deposition, and that witness does not share a common interest with the attorney's client, there has been a deliberative, affirmative and selective use of work product that waives the privilege"))).

Defendant's counsel, in her reply letter of January 31, 2023, notes that plaintiff's counsel did not take the opportunity to question Mr. Tranquellino at his deposition about whether his testimony was influenced by Slade's counsel, but when he was asked questions touching on this issue, Mr. Tranquellino testified that he had not been instructed by defendant's counsel on how to answer questions. (Def.'s 1/31/23 Ltr. at 1-2). To the extent that plaintiff is seeking a hearing on this issue, the Court finds that no hearing is necessary.

As for the questions to which defendant objected, putting aside the question of whether the substance of the conversations with counsel are protected by the attorney-client privilege or constitute work product, the first question – asking the witness what was said by him and by counsel "when you met with [counsel] during that hour, hour and a half" – is clearly improper as to form in that it asks the witness to recite the entire substance of their meeting. To the extent that the "nature and purpose" of conversations between Mr. Tranquellino and Slade's counsel was "for the corporation's counsel to learn facts related to a legal action that [Mr. Tranqullino] was aware of as a result of his . . . employment, [they] are" protected by attorney-client privilege,

---

[5] Citations to "Pl.'s 1/27/23 Ltr." refer to plaintiff's response letter filed on January 27, 2023, ECF No. 61.

"regardless of when they occurred." Gary Friedrich Enters., LLC v. Marvel Enters., 2011 U.S. Dist. LEXIS 54154, at *18 (citation omitted). Plaintiff contends that such conversations "which bear on or otherwise potentially affect the witness' testimony are not privileged." (Pl.'s 1/27/23 Ltr. at 3 (citing Gary Friedrich Enters., LLC v. Marvel Enters., 2011 U.S. Dist. LEXIS 54154, at *18) (internal quotation marks omitted)). However, plaintiff is referring to a "very narrow exception" to the attorney-client privilege protecting communications between corporation counsel and former employees that would touch on "matters that may have affected or changed the witness's testimony." Gary Friedrich Enters., LLC v. Marvel Enters., 2011 U.S. Dist. LEXIS 54154, at *18 (internal quotation marks and citations omitted). As already noted, plaintiff's counsel had ample opportunity to question Tranquellino at his deposition about this issue.

As to the second question – whether the witness rendered or gave an opinion as to the pictures showed to him by counsel – that question, seeking a "yes" or "no" answer is not overbroad. However, to the extent that counsel seeks to expand on that question, by asking questions about what Tranquellino's opinion on the photographs was, it does implicate work product to the extent that his opinion was in response to specific questions asked by counsel. Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd., 232 F.R.D. 103, 112 (S.D.N.Y. 2005) (holding that "[p]re-deposition conversations may also be work product," and to the extent plaintiff's attorneys "communicated their legal opinions and theories of the case, their conversations [with plaintiff's former employee prior to the deposition] are immune from discovery"). "The benefit that might be obtained from asking [Tranquellino] about communications with [Slade's lawyer] that neither concerned information [he] learned while [he] was an . . . employee nor was work product is outweighed by the burden a new deposition

5

would impose." Id.; see also Fed. R. Civ. P. 26(b)(1).  Accordingly, the Court concludes that there is no basis upon which to re-open Mr. Tranquellino's deposition for these few questions.

    B. <u>Interviews of Other Former Employees</u>

In response to defendant's motion, plaintiff seeks a hearing to determine if Slade's counsel "can presume a blanket attorney-client relationship with all of defendant Slade's non-party, non-policymaking former employees . . . and/or improperly solicit representation of the aforementioned employees, thereby obstructing full and fair discovery in this action." (Pl.'s 1/27/23 Ltr. at 1).  Thus, plaintiff raises a broader issue beyond the scope of questioning during the Tranquellino deposition.

Citing state law as governing the scope of the attorney-client privilege, plaintiff contends that in determining whether an informal interview of corporate employees is appropriate, the New York Court of Appeals has held that the privilege only "'prohibit[s] direct communication by adversary counsel with those officials, but only those, who have the legal power to bind the corporation in the matter or who are responsible for implementing the advice of the corporation's lawyer, or any member of the organization whose own interests are directly at stake in a representation.'" (Id. at 2 (quoting <u>Niesig v. Team I</u>, 76 N.Y.2d 363, 374-75, 558 N.E.2d 1030, 1035 (1990) (internal citations and quotation marks omitted))).  Plaintiff contends that the employees identified by Slade were mere witnesses to the policies and practices of the company and plaintiff should be allowed to contact them and engage in informal discovery.  (Id.)  Plaintiff contends that a hearing is required to determine whether defense counsel "improperly solicited the representation" of these former employees and whether these contacts included "any attempts to improperly influence them as witnesses."  (Id.)

6

In her reply letter, defendant's counsel notes that Slade has already provided the contact information for these prior employees and has not objected to plaintiff's counsel communicating with them. (Def.'s 1/31/23 Ltr. at 1). Defendant also points out that plaintiff has provided no evidence to support the need for a hearing to determine if defendant's counsel solicited former employees or instructed them not to speak to plaintiff's counsel. (Id.) Defendant states that plaintiff's counsel asked to have Tranquellino produced, and counsel's office complied. However, defendant now takes the position that going forward, if plaintiff wishes to interview any of these former employees, he is free to do so, but defendant will not coordinate depositions for these individuals. (Id. at 1-2). Plaintiff is free to subpoena them if he wishes to depose them. (Id. at 1).

Given defendant's counsel's representation that she has provided plaintiff with the names and addresses of Slade's former employees and has no objection to plaintiff's counsel conducting interviews of them, the Court concludes that there is no need for a hearing on this issue. To the extent that plaintiff is concerned that defendant's counsel may have improperly solicited representation of these former employees or instructed them not to cooperate, plaintiff's counsel is free to ask those questions during the interview or during deposition if plaintiff chooses to subpoena them. Accordingly, the Court concludes that no hearing is required on this issue.

## CONCLUSION

Having considered the parties' arguments, the Court denies plaintiff's request for a hearing and denies plaintiff's request to reopen the Tranquellino deposition. Plaintiff is free to interview any of the former Slade witnesses previously identified by defendant or may subpoena them to testify at a deposition if that method is preferred.

7

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
April 25, 2023

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

8